May it please the court, my name is Megan Brewer and I represent petitioner Nathalia Mata. I would like to reserve four minutes of my time for rebuttal. Petitioner suffered severe political and domestic violence in her home countries of Honduras and Nicaragua causing lifelong psychological harm. At a very young age she had to hide in the basement with her grandmother while their house was shot at with machine guns, praying as the bullets flew overhead and their candle went out. As a young child she went without food because it was not safe for her family to go out. She witnessed her father being pistol whipped by soldiers. As an adult she suffered verbal abuse, extremely severe beatings, bruises in black eyes, rape, death threats, and controlling surveillance by her ex-husband. She has never had an opportunity to present these claims to relief before an immigration judge because she was a victim of ineffective assistance of counsel. Ms. Brewer, can I just ask you a question? I think we're kind of familiar, rather familiar actually, with the record here and everything involving your client and it's a pretty extensive record including numerous motions to reopen or to supplement the motions to reopen. I was just curious, in your motion requesting a stay and referral to mediation you mentioned that you filed another motion to reopen in the BIA. I think that one's based on your client's daughter's juvenile diabetes diagnosis. Can I ask what is the status of that motion and how do you believe that affects this proceeding? Yes, your honor. That motion is still pending and also I would like to point out that if this court were to find that the board erred in the equitable tolling analysis, then it would not be necessary to address any sui sponte reopening whatsoever, but that the motion that's pending before the board is also a sui sponte motion and it's on the basis of, it's for the purposes of cancellation of removal based on new hardship evidence that has come up. Let me ask you, you just mentioned that, what if we conclude that the BIA did not abuse its discretion in declining to apply equitable tolling or fine change country conditions? Do we need to reach the BIA's conclusions that Ms. Mata failed to show a prima facie eligibility for relief? Yes, your honor, because the court has jurisdiction under its precedent in Bonilla and Menendez that if there's an underlying legal error underlying the decision to deny sui sponte reopening, then the court has jurisdiction to review that and in this case the board did not actually deny sui sponte reopening in its discretion. It found that the petitioner was not prima facie eligible for relief, so that's something that the court can review. Well, but I'm saying if we find that there was no error there in declining the equitable tolling or the change country conditions, because I think you're bringing it up for the sui sponte relief request, if there is none, do we still go into the prima facie sort of arguments that you're making here? Yes, so there's actually four bases for reopening in this case. There's two statutory bases. The is just a regular motion to reopen based on ineffective assistance of counsel. That's the one that has the equitable tolling claim. The second is based on changed country conditions and then there's also two requests based on the board's sui sponte authority. So even if the court finds that the equitable tolling does not apply and there's no change country conditions, then the board could still reopen it under its sui sponte authority and that's when the court needs to review whether the court made an underlying legal error in determining the petitioner did not establish prima facie eligibility. Okay, and is it your view, I guess, let me ask you about the equitable tolling issue. Is it true for you that a reasonable person in Ms. Martha's position would have suspected that Ms., I think her name was Will Herrera, would somebody in your client's position would have reasonably suspected her ineffectiveness until you told her, I guess it was you, in February of 2018? Yes, Your Honor. So I would just like to point out that under this court's precedent, being concerned is not the same thing as being on notice. That's in El Vio de Leon. And in this case, she may have been concerned when at the end of prior counsel's representation, Gloria Will Herrera, but at that time, she then consulted other attorneys who advised her that the best and only course of action was to apply for a stay of removal with ICE and that stay was granted. So I think that given that she relied on the advice of those attorneys and then subsequently relied on the advice of the ICE officer, that her conduct was reasonable. And during all that time, none of the attorneys she consulted actually requested a copy of the file. The first time that the file was requested was in January 2018. But I'm trying to figure out on the due diligence. I mean, she made a statement in her declaration that she was upset and felt that Ms. Will Herrera should have kept track of her case once she confronted Ms. Will Herrera about the government's answer in grief in 2013. That seems like a significant moment for her with respect to due diligence. Yes, Your Honor, but she started consulting other attorneys shortly after that. And I don't think that the fact that she was alarmed was based on a reason that wasn't reasonable because she doesn't read English and she's a lay person. It was because the government's brief was found in red and this was alarming to her. So when she visited the non-attorney consultant that she believed was an attorney, Connie Quadra, she discussed the case with her then. And at that time, it was when she started looking for new attorneys to represent her, but her case was still pending before this court and hadn't reached a decision. So I think it was also not only reasonable for her to start consulting attorneys, but also to wait for this court to make a decision whether to uphold the order of removal or not. Counsel, you're advancing a lot of different theories here. What's your strongest argument? So I think it's clear that the board did err on the equitable tolling analysis because the board only found that petitioners was not diligent for two reasons. The first was because she did not provide the dates on which she sought consultations with attorneys. And I think it's clear from the record that she may not have established the exact dates when she consulted attorneys, which is not required under the law. But she established very nearly pinpointed dates when she consulted them. So the only times when she consulted attorneys were between May 2014 and August 2014, a three-month period. And during that time, she consulted attorneys, hired an attorney, prepared and filed a successful application for a stay of removal. So I think that is clearly a reasonable amount of time and she does not need to establish the exact dates on which she met with the attorneys. And then the second period when she consulted attorneys was after ICE notified her that a stay of removal was something that was temporary and was not necessarily going to continue. And that was in July of 2017. And at that time, ICE gave her until January 2018 to stay and to try to seek new counsel to do her case. During that time, she consulted at least three attorneys, one of whom told her that there was nothing that could be done and her doing something with her case would be like raising the debt. But nevertheless, she did manage to consult a present counsel and request a copy of the file before the end of that time. And the board doesn't explain any reason why that's not a reasonable amount of time or a reasonable course of conduct other than that she failed to provide the exact dates on which she consulted the attorneys. And then the board's second reason for finding that she was not diligent was that the board's decision says that she failed to indicate the date she received a document from a court informing her that her appeals were falsely styled as pro se, which presumably could have placed her on notice. But I think it's not clear what the board is referring to because there was no notification from a court informing her that she was pro se. What she received was documents that said pro se on them. And she was never actually made aware that what pro se meant, that she was pro se or that her attorney was defrauding her. As a lay person, she believes she was represented by counsel. She cannot be expected to know the meaning of pro se or understand that her counsel was from the court. And she was informed for the first time on February 2nd, 2018, that her appeals had been falsely styled as pro se, which meant that the courts believe she was representing herself, even though she had an attorney. So I don't think that this reason, that either of these two reasons for the BIA to have found that she did not act with due diligence, it can stand. And because the board didn't find any other reasons why she failed to act with due diligence, this court cannot uphold the finding of lack of due diligence based on any reason that's not stated by the board. Does the court have any other questions or like to discuss the equitable tolling issue? I have a question, which is apparently not your strongest argument. But if we assume that we do have jurisdiction over the sua sponte, your last issue about the change in the law, the Parara case, how does that, how does that apply to you? How does, what difference does it make for your claim? Okay. So even though the issue that formed the basis for the change in law was relating to the 10 years of continuous physical presence, and that issue is now before the Supreme Court, this court actually does not need to hold this case in order to decide on the issue of petitioner's motion to reopen based on change in law, because the board assumed that petitioner established the 10 years. And the only reason why it denied the motion on that basis was because it found that she did not establish a prima facie case for cancellation of removal, for failure to establish a prima facie case that her children would suffer the requisite hardship. So whether or not petitioner established a prima facie case, meaning that there's a reasonable likelihood that statutory requirements for relief have been met, is a legal issue and is not a discretionary issue because it pertains only to statutory eligibility and not to the ultimate exercise of discretion. And therefore, this court does have jurisdiction to review whether the BIA applied the correct legal standard. And in this case, the petitioner met the board's standard for reopening, which before that set forth in the board's decision in matter of MS. And the standard is to submit sufficient evidence to indicate that there's a reasonable likelihood of success on the merits to make it worthwhile to develop the issues at a full evidentiary hearing. And under the board's precedent, this is particularly important in cases involving hardship, which is highly subjective in nature and must be assessed in a hearing before an immigration judge. And I see that I'm almost running out of time, so... Do you want to reserve the balance of your time? Yes, Your Honor. Okay. You may proceed. Good morning. Alison Igoe, representing the Attorney General. The petitioner in this case has two very high hurdles to overcome before you can get to whether she proved a prima facie case for the underlying relief. She has to show, I mean, she filed this motion five years after the board issued its decision in this case. She had 90 days. And I want to correct one thing. The petitioner's counsel keeps saying that these were falsely represented as pro se. Ms. Mata Garcilaza was not represented by counsel before the board. The attorney in this case never filed a notice of appearance. And she signed the notice of appeal. She signed the brief. All of the documents were sent to her. She may argue that she didn't want it to be filed pro se, but she has not shown proof. There is no retainer agreement. And the record does not support her assertions of what she paid her attorney. So these were properly filed pro se. The fact that she may have had help preparing the documents does not mean that these documents were filed falsely pro se. In fact, the ABA issued a formal opinion on this in 2007 and said that attorneys can give litigants help, including preparing documents, without disclosing what type of help they did, where a litigant is pro se. So from the time that she filed her notice of appeal, the petitioner in this case was pro se. In order to trigger the equitable tolling, she had to prove not that there was ineffective assistance in the underlying case. All of the cases in front of this court showed that she had to prove fraud, deception, or error that motion to reopen. And that she has improved. The petitioner's counsel leans very heavily on the domestic violence, but she does not show anything in this record that prevented her from filing the motion within the 90 days. And I know that she states that she wasn't a sophisticated person, but in saying the court addressed that very issue and said that he contended that he should be excused because he's not a sophisticated man. And the court said that every single petitioner or every single immigrant finds himself in that type of situation. And as far as due diligence, this court has to find that the board was arbitrary or irrational in finding that she did not exercise due diligence. She said that what raised her suspicion was the government's red brief, which is the brief that is filed in support or in petition for removal. That brief was filed on September 5th, 2013. The petitioner did not file her motion for another five years. And also in her motion, she states, let me just find this. She said that because it was her desire to remain safe and stable, that she was satisfied, and these are the words in the motion, that ICE granted her stay of removal and permitted her to remain in the U.S. It was not until July of 2017 that she became aware that permission from ICE would not allow her to continue to remain. In the interim, she consulted, I'm looking, at least five attorneys before she consulted her present attorney. And in a footnote, the petitioner's counsel said, well, we didn't have to file a complaint against them because they're irrelevant to the underlying ineffective assistance of counsel. But if they gave her false advice or defrauded her or deceived her that prevented her from filing a timely motion to reopen, then it's their activity that is relevant to the due diligence and the ineffective assistance of counsel in this case, not her underlying relief, which is what the petitioner's counsel is arguing in this case. The petitioner also could have reopened if she showed changed country conditions. She relies on the treatment of women in Honduras, but she also submitted a declaration from her expert, Claudia Herman, who either in her statement or curriculum vitae, it's at AR 418, said that she had been researching violence against women for 23 years. This is not a changed country condition in Honduras. I would also just point out that what the petitioner slides over in this case is that Ms. Mata got a temporary restraining order or restraining order, excuse me, a restraining order against her husband. She does not claim in her declaration that she was mistreated after that. All she says is that the court required for the children to be passed back and forth between them. And in fact, during her testimony in the underlying case, she claims that her children were living with her ex-husband in Honduras. Although she now says that she escaped, she testified under oath that her children were with her ex-husband, the father in Honduras. Let me just ask you a couple of questions. You were talking about the ineffective assistance of counsel claim and the due diligence. It looks like Ms. Mata sought out new counsel after she realized her former counsel was not tracking her case in 2013 and was later told that her only option was to request days of removal. Why isn't that enough for due diligence? What did she need? That was one attorney and also I would point out that the board noted that we discovered that or the attorney allegedly said that to her. Did she need, I mean, you heard Ms. Brewer, does she need exact dates? Because I think Ms. Brewer cited a case that said you don't need exact dates. We don't need exact dates, but you need some sort of a date. If she consulted that attorney in 2013, that makes a big difference. And if she consulted that attorney in 2017, directly before she met Ms. Brewer, that goes to the question of due diligence. What did she do? And I would submit that she really rested on her relief. She states it in her motion that she was perfectly happy because ICE was giving her motions, you know, was granting her motions to stay her removal. And when the administration changed in 2017, the policy changed about granting those days. And she was also all of a sudden faced with being, you know, having her removal order executed. So the dates of those, at least some vague date is relevant to her due diligence and whether she accepted that, but she consulted five different attorneys. Maybe that one attorney told her that. And I would also point out that she says those attorneys never, you know, didn't request her file, but she was pro se in her appeal before the board. And she was also pro se in her petition for review. And she should have had at least some of the documents in this case. Let me ask you this. I know you talked about some of the prima facie issues and whether we can reach them or that we really can't reach them. But let me ask you about one in particular. Is there a way that we reach the question as to whether the BIA abused its discretion in concluding Ms. Motha did not make a prima facie showing of extreme hardship for purposes of the cancellation of removal? I think under Fernandez, we have jurisdiction to review motions to reopen concerning new requests for discretionary relief. But I don't believe that's if the motion is untimely. And that motion was filed five years afterwards. And in this case, the board concluded that she did not show exceptional or extremely unusual hardship to her children. And that is a decision by the board that is not reviewable. Excuse me. You're now going to the merits of exceptional hardship. So could you go back and address Judge Murguia's procedural question? Because I don't I think I missed your answer to that. Yeah, I don't think that you get to the underlying merits of her decision. Because in order to reopen, because she is way out of time, she has got to prove that the board was when it decided she was not due diligent in pursuing her ineffective assistance of counsel. And I would say that she did not show ineffective assistance of counsel that prevented her from filing the motion. But in any event, the board decided on due diligence and she has to overcome that hurdle. Now, in order to reopen, she also has to show a prima facie case for relief for underlying relief that she seeks. But if she can't get past the equitable tolling issue, the court does not have to reach the underlying merits of her case. And it's the same with changed country conditions. If she does not show changed country conditions, then the court doesn't have to go to that second step. It's very much like the board. If they find in an asylum case that there was no persecution, they don't have to go to the next step of deciding whether there was acquiescence or because they have decided an issue that just puts the case at rest. And in this case, if she can't get over the procedural hurdles to excuse the time limit, then the court does not have to get to the underlying merits. Let's take a minute, if you don't mind, to talk about the country conditions because she does point to, you know, a report that says that there are still the anti-Sandinistas are, you know, it's a problem and that she's fearful based on what's happening there that she will be somehow persecuted or affected. What's your response? She does not show any persecution of herself, but rather any political opinion. She would have to proceed, I would think, on a particular social group based on her family because she says that the only people that have received threats were her uncle, who is very politically active, and his mother. She also says that her father is still in Nicaragua, he works for the bishop, and he has not had any threats. Her mother is there, her sisters and brothers are there, they've gone to school, they have not had any threats. She herself said that the only two people were the bishop, who remains in Nicaragua, and his mother, and they have not been harmed. So, you know, she would have to proceed, I would imagine, on a family group, particular social group, because she has not shown that she has any particular social, rather political opinion. And, you know, she argues that she has sustaining, you know, mental condition, but I would say that she submitted a letter from a colleague who said that Ms. Monsa had worked for her as an assistant for years and was a wonderful employee. She managed to pursue, you know, her legal case to five or six or seven different attorneys. I can't imagine that, you know, that is preventing her from, you know, filing a timely motion to reopen. How about the most recent motion to reopen regarding her daughter? What's the status of that, and does that offer an opportunity for mediation? No, I would argue no, because the board found that, I'm looking for it in the board's decision, but the board found that she did not prove exceptional and extremely unusual hardship. And the only additional evidence... I'm talking about the new case. No, no, no, yes, and I'm addressing that. The only additional evidence that she brings in this motion is that her daughter has been diagnosed with an illness, but she doesn't show that there is no medical help in either of these countries, in either Nicaragua or Honduras. And, I mean, there are multiple cases in which people have asserted medical conditions of either themselves or their children, and the court has said, you can get medical treatment. That is not extremely or unusual hardship. The only recourse to me that she would have is that most recently, and the mediation was requested on the basis of what appears to be a new policy that is forthcoming from this administration. And I would just point out that ICE, on March 4th, there was a press release saying that they were developing a new case review process for individuals who believe that their cases don't rely with its detention enforcement or removal priorities, and that you would go to ICE, I believe. That's the only information that I have. But my understanding is that the person's lawyer would approach ICE and would present their case to ICE. And so she has that recourse open to her. Okay. Well, my time has expired. I would ask the court to deny the petition. Thank you very much. Thank you, Ms. Saico. Ms. Brewer? Thank you. First, I'd like to address the issue of whether the petitioner was pro se. First of all, under this court's precedent in Garamani, the facts asserted in the motion to reopen must be taken as true unless they're inherently unbelievable. Further, in this case, the board did not find that they did not believe her as to any of her statements, and therefore the decision cannot be upheld on that basis. And I'd also like to point out that this is conduct that the Ninth Circuit has sanctioned attorneys for by filing filings as pro se when the agreement between the attorney and the client is that the attorney is representing the person, and they're attempting to avoid attracting additional discipline by concealing the attorney's representation. Ms. Brewer, I'm not sure this is going to matter, but could I just clarify, is your position really that she wasn't pro se, or isn't your position that she didn't realize she was? Yes, Your Honor, but our position is that she hired, she had an agreement with an attorney to represent her, and that the attorney submitted the filing as pro se. I know the facts. Just tell me, is your position that she, as a matter of law, wasn't pro se, or aren't you arguing that she didn't realize? I'm not sure whether it makes a difference or what the distinction would be. I believe that she was pro se, and from her understanding of the agreement she had with her attorney, she was represented. Thank you. You've answered my question. Thank you. If there's no evidence that she had an attorney, such as a retainer agreement, your opposition is saying, or any other evidence? Yes, Your Honor. However, that was not a basis of the board's decision. The board never stated that they did not find that there was sufficient evidence that she believed that she was being represented, and the board correctly did not find that, because the board was required to take the facts she presented in her declaration as true, unless they were inherently unbelievable. Unless there are any other further questions, I'm over time, so I will rest. Thank you. Ms. Brewer, Ms. Igoe, thank you very much for your arguments here today. I really appreciate it. The case of Ms. Mata Garcila versus Garland is now submitted.
judges: Murguia, Christen, Lefkow